Case number 18-7135 Capital Services Management Inc. Appellate v. Vesta Corporation Mr. Temple for the Appellant Ms. Breadlove for the Appellant Ms. Breadlove for the Appellant Ms. Breadlove for the Appellant Good morning. May it please the Court, my name is Donald Temple. I represent the Plaintiff Appellate, CSMI in this case. We come before the Court seeking a remand with the particular instruction that discovery be allowed to ascertain the extent to which the Plaintiff satisfied the statute of limitation requirements in this case. Standard of review is de novo. I ask the Court that we suspend with the facts except for one exception. It is our contention here that the lower court erred in several respects. One in the standard which was applied, i.e. that it should have applied to some re-judgment standing and the extent to which in applying motion to dismiss standard, it erroneously made inferences that were inappropriate in the Defendant's favor. Critical to that particular argument, I think the Court should note that both the lower court and the appellee and the Defendant relied upon the Plaintiff's complaint, but the Plaintiff's complaint, Your Honors, respectively, is not a part of this record. What is a part of this record is, in fact, at the appellee's lower court. You mean the Plaintiff's complaint in the superior court action? That's correct. But it's judicially noticeable. Well, it's not judicially noticeable. In fact, Your Honor, what the Court judicially noticed was the Plaintiff's amended complaint and the appellee's. Isn't that judicially noticeable, too? It is, indeed. Okay. But the distinction, however, is that in so doing, the Court, for purposes of actual notice, relied upon its observations of the allegations in the amended complaint. And the amended complaint is dated, Your Honors, respectively, October 2014. The seminal date, for purposes of the statute of limitations, going back from the date on which the amended complaint, in this case, was filed, is August 2014. The Court, however, as does counsel for the appellee and its pleadings below, notwithstanding that we represented that the amended complaint was filed in the Grammian footnote 1 of our brief, the Court below operated on the premise that the July 2014 complaint was the actual complaint, when it was, in fact, the October 2014 complaint. So in assessing both the summary judgment standard review and the motion to dismiss review, the course review is analysis, per se, because there is no complaint in the case. So if the allegations that were in the October, the amended complaint in October 2014, if that had been filed in July, I get that it wasn't, but if those same allegations had been filed in the July complaint, then would this current complaint be untimely? Is your point just the October date wasn't? We submit not, Your Honor, because those allegations in the October 2014 complaint are still not detailed enough in terms of the third prong of the notice provision in this discovery rule test, which is evidence of actual wrongdoing. We have an awful lot of allegations in that October complaint about collaboration with VESTA, you charge civil conspiracy. So it's a little hard to figure out how that wouldn't show. I get that that was October, not July. My question is, assuming it were July, why that wouldn't be enough to show that you had inquiry notice of VESTA's potential wrongdoing? The underlying claim, Your Honor, is tortuous interference with the contract, a tortuous interference with business perspective. And to really grasp that particular question, the knowledge of the nature of the case in this case is really to – is ascertained from a reference to the attachments in the joint appendix to where – what we learned from that deposition in July 2016 in the e-mails. The nature of this case, the nature of the tortuous interference came down to the nature of the wrongdoing and the level of intent. At that particular point when that complaint – when the complaint was filed, the plaintiff had not had an opportunity to conduct any discovery and was surmising that there was a potential collaboration that rooted itself in – He must have been doing more than surmising, right? He must have had – D.C. has an equivalent to Rule 11, so he must have had a reasonable basis in law and fact to allege collaboration conspiracy, right? Surely you had that when you filed your October complaint. Well, to some, except for purposes of D.C., because we had information regarding D.C., but we didn't have information – But we didn't bring a claim – I get you didn't. I'm just saying that surely those allegations about VESTA and an allegation of civil conspiracy and collaboration were made on a reasonable basis and in good faith. And the Court is absolutely correct. I mean, to that extent, there is clearly a sentiment, but from a Rule 11 point of view, as the appellee cites in their own writings, and even they say in this case there's no evidence of the tortious interference, but out of an abundance of Rule 11 caution, we didn't believe at that particular point in time that we had necessarily the specific information evidence-wise to meet the standard that there was an intentional wrongdoing on the part of VESTA because we had not had access to any e-mails, access to any information whatsoever. But for purposes of the discovery rule, the question is not whether you had enough information to clear Rule 11 at that point. It was just whether you knew enough to start the two-year clock under which you would do whatever investigation you can do pre-filing of a complaint. The Court is absolutely correct. And if I might answer the Court's question in the context of judgment, let's say that assuming, however, that this October 14th complaint was filed in July, it was not. It was filed in October. There is no July 14th, there's no July complaint in this record. That July complaint, the Court wouldn't take judicial notice of that July complaint. The July complaint that the Court is referencing was not a tortious interference complaint. It was a breach of contract claim. It was a 31-paragraph complaint with no reference to civil conspiracy or tortious interference. So to the Court's point, our duty is to investigate. And there is a limited investigation in process. But the point of the appellant is because of the October 14th, October 2014 complaint. At that particular point, that's after the August 2014 statute of limitations. Consequently, our position is that what did we know, what should we have known, I understand, but we're testing your answer. You said that complaint wouldn't have been enough even if it had been filed in July. I don't think that that's, well, to the extent that it was filed in October. Well, you can concede that it wouldn't be enough and still win your case here, correct? Yes, sir. Okay. Go ahead. Did I answer your question? No, I just, yeah. You can concede the point and still win, right? Yes, Your Honor. Let me ask you this. Did anything significant change between July and October? Well, in that world of commonplace litigation, there's a complaint filed. There's a contract that's taken from CSMI, and once the complaint is filed across the street, there's a process that takes place. I mean, we have a status hearing. And there was no discovery. There's no discovery. So you know, you knew what you knew in May when all the events happened, which is Park Southern all of a sudden is displaced by the district, and your client all of a sudden is displaced by Vesta, and this is done purportedly on an emergency basis, and it seems to have a little bit of a bad whiff. That's correct. That's what you know in May. That's correct. And then based on that, with no opportunity for discovery, you can get yourself to the point you were in October, where you have a complaint that spells out a fair amount with regard to Vesta. Not exactly, Your Honor. What we know is enough to file a complaint against the District of Columbia in July. Once we file a complaint against the District of Columbia, it triggers the initial status hearing across the street, which happens, and at that particular point, we get a scheduling order. In the interim, we file an amended complaint the more we learn gradually, and that amended complaint occurred in October, three months later. And that is when the complaint comes about, and that begins, then we go into a discovery process. However, in November, the district, as you might know from the record, filed a motion to stay discovery, which was granted. So we didn't have the opportunity, subject to the stay order, to even conduct a discovery to get into the weeds in terms of the facts that we learned subsequently, that Vesta itself is having these communications with the district's lawyers regarding the contract, and that there are e-mails between Vesta and the District of Columbia government regarding CSMRI's contract. And so these are things that we learned subsequently that gave us more of the I see my time has expired. Okay, thank you. Thank you. May it please the Court, Lindsay Breedlove for the Appellee Vesta Corporation. The district court's analysis in this case was exactly right, and it proceeded in three steps, and in those three steps determined that the complaint that Capital Services filed against Vesta was filed after the three-year statute of limitations had run. It can't be exactly right to the extent it treated the amended complaint as if it had been filed more than three years out. I'm so glad you asked that, John, because what the district court did, in fact, was to say that the only argument that Capital Services raised with regard to why the statute of limitations had not run is that its knowledge, or the information available to it, changed between when the injury occurred and July 2016, when Capital Services took the deposition of a DHCD employee, Milton Bailey. The district court did not use the October 2014 complaint to do anything other than to reject that argument, to say that that argument is belied by the fact that nearly two years earlier, when it filed the amended complaint against Capital Services or, excuse me, against the District of Columbia, it in fact shows, as Your Honor, Judge Millett explained, that it has information about a civil conspiracy allegedly unlawful. But we don't know when between. You may ultimately be right about that, but this is a motion to dismiss, and under Firestone, the question is whether the complaint, on its face, is conclusively timely. That's the question here. So unless you can point to something in the complaint or something that we can take judicial notice of, the fact that the amended complaint might be inconsistent with earlier statements is something that can be resolved at trial. Understood, Your Honor. As I mentioned, the step we're discussing here is step three of the district court's analysis. Step one of the district court's analysis is that the discovery rule does not, in fact, apply in this case. I read your brief as sort of conceding that it did. No, Your Honor. No? The discovery rule does not apply here because there is not an obscure relationship between the fact of injury and the alleged conduct by VESTA, which is the entering into an emergency contract between VESTA and the District of Columbia. Suppose you're wrong about that. Suppose I'm wrong about that? Step two of the district court's analysis was that if the discovery rule, in fact, applied, the 2017 complaint that VESTA filed against or, excuse me, the capital services filed against VESTA on its face demonstrated the capital services was on inquiry notice of the potential claims against VESTA at the time it was injured. The amended complaint? No, not the amended complaint, Your Honor. The 2017 complaint in this case. The district court? The district court complaint, yes. Oh, okay. The district judge, Judge Sullivan, on page. So your position is in the bottom, the complaint. I'm just using the Firestone language again, right? You think the complaint on its face concludes, shows that the case is conclusively done? I do, yes, Your Honor. And what is it in the complaint that does that? Under D.C. law, the question is whether. You're going to tell me what in the complaint. Right? Yes. The allegations in the complaint are that, and that matter to this question, are that VESTA had a property management contract with this apartment complex for a period that preceded capital services contract, and it was ousted by capital services in March of 2014. VESTA was a competitor of capital services for property management services in general and at this property in particular. A mere two months later, when the District of Columbia took over ownership of this property, it installed VESTA through an emergency contract. Capital services had knowledge that VESTA took over management of the property. That's in its complaint. Now, the legal standard and why I started with that is, as Judge Katz has mentioned, it's not a question of actual notice. It's a question of inquiry notice. Was there a duty to further investigate? In your test that you propose is some evidence of wrongdoing. I do, Your Honor, yes. From the facts you just recited from the complaint, what was the evidence of wrongdoing by VESTA? Well, if we look at a case out of the D.C. Circuit, Williams v. Mordofsky, that case provides insight into what that particular standard means. It cites those same three elements, and it applies D.C. law. It's a legal malpractice case, and it asks the same question, what's the evidence of wrongdoing? And the court concluded that based on the fact that the plaintiff had an evidence of wrongdoing, there were practical negative implications of the defendant's conduct. It was on inquiry notice. Practical negative implications. I don't know what that means in this context. Surely there's nothing negative or suggesting wrongdoing just when D.C. says I need a management company to take over. You've been doing it a long time. Take over. Surely you don't think that meant your client, that there's some evidence your client had done something wrong. I don't think it means that my client has done something wrong. That's accurate. If you look at D.C. law about what it takes to do that. I'm just trying to get from the complaint. Yes. Where you get from your facts that you recited some evidence of wrongdoing. Taking over the contract. Is it your position that taking over the contract was the evidence of wrongdoing? My position is that the circumstances that existed at the time, of which Capital Services was aware, including the fact that Vesta took over the contract on an emergency basis. Is there something else that is the evidence of wrongdoing? They had, well, the question. They had the contract before? They had the contract before. Government contracts change hands all the time. If I could cite a D.C. case that was actually cited by Capital Services in its reply brief, it's Onyaziri v. Spivak. And it lists a set of factors to evaluate whether or not there is intentional interference. And the factors that matter are the same factors about which these sets of facts point to some wrongdoing. This is a motion to dismiss. Yes. And even if you're right that maybe plaintiff should have been suspicious here, this motion to dismiss, you can't get that out of a complaint. We have to view these facts in the light most favorable to the plaintiff. And even if you're totally right that under the circumstances of this case, they should have at least been deeply suspicious about Vesta's behavior here, I don't see how we can consider that at the motion to dismiss it. It's my contention, Your Honor, that the allegations in the complaint itself, the district court complaint in this case, show that Capital Services should have. Well, that's what I was just asking you. What's in there other than the fact that the district took over and on an emergency basis gave it to Vesta over Capital? What is in there other than that? The two companies are property management companies that compete with each other. That's the plan on the basis of the complaint. Vesta had that company, but they're competitors. They're competitors. The district, if it was going to replace the property manager, obviously would replace it with a company that was in the business, right? Yes, but they were competitors as to this property in particular. Vesta had been in place with a long-term contract with the apartment complex in advance. And the language that my opponent repeatedly uses is a euphemistic emergency contract. I still don't get where at a motion to, I hate to be repetitive, but this is a motion to dismiss, where at this stage of the litigation it is property. You're just speculating about what Capital should have done. And we can't do that at the motion to dismiss. I don't think that I'm asking you to speculate, Your Honor. The question about what it means for someone to be on inquiry notice asks whether by the exercise of reasonable diligence the plaintiff should have known of the injury, its cause, and some evidence of wrongdoing. The thing that Capital Services takes issue with is the actual contract between the district and Vesta, which displaced Capital Services. That contract, Capital Services knows that Vesta is a participant, knows that it's a competitor, and knows that that contract is what caused its injury. Now, if you look at the case you might not want to emphasize these allegations, but I think you may need them and they may be helpful to you. But there's a little bit more to it, right? Part of it is that when the contract was shifted from Vesta to Capital Services, it was lawfully done because of dissatisfaction with how Vesta had performed. And then when the contract was shifted back from Capital Services to Vesta, that was done unlawfully because there was a term contract and it was breached midterm. I would concede that there was a... Which might, you know, doesn't paint your client in the best possible light, but it seems like it's at least reason to think that there might be something inappropriate going on. I think that the circumstances and the level of dissatisfaction that was expressed by the various entities that owned the property and were hiring property managers is certainly a factor that goes to whether Capital Services should have had, or by the exercise of reasonable diligence, should have known of the potential evidence of wrongdoing on Vesta's part. So those facts make clear, because that's the test, the facts that you recited make clear that Vesta was not innocent. Those facts put Capital Services on inquiry notice, a duty to inquire. Because, again, your test is that those facts gave rise to evidence of wrongdoing. So I'm trying to make clear, that's where I think we're having the discussion, is how those facts get to... I get how they get to at least allegations of wrongdoing against D.C. They were the player. I just want to be clear about your position that those same facts are enough to put someone on notice that Vesta was not an innocent in these events. Is that yes? That is my position, but if I could just clarify the legal standard. The legal standard is not whether, based on those facts that I've recited, without any sort of inquiry on Capital Services' part, it could have filed the same complaint. I understand. I understand how the legal test works. It's not that they couldn't have filed a complaint at that point, but that a contractor's in, ownership changes, and they're brought back in is evidence of wrongdoing for purposes of this. According to the test in D.C. Some evidence of wrongdoing. is enough information that through the exercise of reasonable diligence, Capital Services should have known of number three, some evidence of wrongdoing. The discovery rule... By Vesta. By Vesta. The discovery rule applies to circumstances, and Judge Chadle, you sort of shot me down on this, but to circumstances in which there is an obscure relationship between the injury and the conduct. And I understand exactly what you're asking me, which is what about this particular conduct should Capital Services have known was fishy by Vesta at the time? Well, if you look at the cases to which the discovery rule applies, there are cases in which there is, for example, justifiable reliance by the plaintiff on the defendant's professional skills, such as in the context of legal or medical malpractice. Or there are cases in which there's a latent deficiency that the plaintiff can't have discovered. So, for example, in a construction contract, if someone built a building and you don't know until five years later that something went wrong, obviously the discovery rule applies in those contexts. But we don't have that obscure relationship here. Capital Services knew that Vesta entered into an agreement with D.C., that it had been the property manager before, that there was a level of dissatisfaction sort of across the board. Your theory is that you were the latent deficiency. This is all allegations, to be crystal clear. But they thought this was all D.C. stuff. They didn't know about what they would say, and to be clear, just allegations. Vesta behind the scenes was, you know, wrapped up in this as well. That they didn't know until later. And so they just thought, lucky day for Vesta, that D.C. got tired of these prior folks and came and took over this apartment complex and then called the one who had been running the show for almost all the time. My position is that that set of facts and the fact that Vesta was one of the two participants in the contract about which Capital Services complains is sufficient for inquiry notice. If I could just take one more minute and say— You're way over. You can take one minute. One minute. Okay. I agree with whoever mentioned earlier that you can take notice of the July 2014 complaint in the D.C. Superior Court, and it's not part of this record. But if you do, you will see that in paragraphs 17 through 19 of that complaint, Capital Services complains not just about the District of Columbia, but specifically about the contract between Vesta and the District of Columbia. So even if we're just looking at the July date, and even if you don't find somehow the allegations— Those are the same facts you've already alleged, you've already talked about. Yes. They are. Yes. But it is— It doesn't add anything. It is proof in the public record that Capital Services had that knowledge at that time. Okay. Thank you. Did Mr. Kirkwall have any time? You can take a minute. I thought I reserved four minutes. Pardon me? Oh, I'm sorry. You used it all up. I'm sorry. But I'm giving you an extra minute. Okay. The court asked a question of the appellee what was in the complaint. And what the appellee answered was what was in the amended complaint. I underscore that the lower court, on page 10 of its opinion, did in fact parallelly adopt the amended complaint without reference to it as being filed in October. Rather, it cited the amended complaint as being filed in July. It's for that reason that the court said that as follows and concluded, such allegations regarding Vesta and DHC's torturous collaboration were made well before CSMI had access to the 2016 discovery. What the court should have done is realized that no substantive communication or filings had been filed in the court until after the August 2014 statute of limitations. Not only did the court rely on that July, misrely on that July filing, but so did the appellee in its argument, notwithstanding its contingence. Do you agree that you learned something factually new between the July complaint and the October complaint, which is what caused you to amend it? Absolutely. And the court takes judicial notice of that. We don't know when between July and October you learned that. No, because it was. That's a fact question. Yeah, that's a fact question. Absolutely. Thank you. Thank you. Case is submitted.
judges: Tatel, Millett, Katsas